4 F.3d 417
 62 USLW 2184, 39 Cont.Cas.Fed. (CCH) 76,562
 UNITED STATES of America, Plaintiff-Appellee,
Larry S. Eagleye (91-3784/92-3066); Alan Russ and Charles
Broome (92-3066), Plaintiffs-Appellants,
v.
TRW, INC. (91-3784/92-3066); General Electric Company
(91-3784), Defendants-Appellees.
 Nos. 91-3784, 92-3066.
 United States Court of Appeals,
Sixth Circuit.
 Argued March 22, 1993.
Decided Aug. 23, 1993.
Rehearing Denied Sept. 21, 1993.*
Order Denying Motions
Oct. 14, 1993.*
 
 Marcia W. Johnson, Asst. U.S. Atty., Office of the U.S. Atty., Cleveland, OH; Michael F. Hertz, Jr., David W. Long (argued and briefed), Joyce R. Branda, U.S. Dept. of Justice, Civ. Div., Washington, DC; John S. Rea, Meyers, Hentemann & Schneider; Reginald P. Trubey, Jr. (argued and briefed), Bernardic & Trubey, Cleveland, OH, Leonard F. Carr, Carr, Feneli & Carbone, Mayfield Heights, OH; and Judith A. Lehnowsky, Rocky River, OH, for plaintiffs.
 Gerald W. Palmer (argued), Dale H. Oliver, Jones, Day, Reavis & Pogue, Los Angeles, CA; Patrick F. McCartan (briefed), Jones, Day, Reavis & Pogue, Cleveland, OH; Susan Z. Haller, Jones, Day, Reavis & Pogue, Washington, DC; and Robert D. Labes (briefed) and Thomas S. Kilbane, Squire, Sanders & Dempsey, Cleveland, OH, for defendants.
 Before: RYAN and SUHRHEINRICH, Circuit Judges; and PECK, Senior Circuit Judge.
 RYAN, Circuit Judge.
 
 
 1
 This appeal involves two consolidated cases filed under the qui tam[1] provisions of the Federal False Claims Act (the Act), 31 U.S.C. Secs. 3729 et seq. In Case No. 92-3066 (Eagleye I ), the plaintiffs, Larry Eagleye, Alan Russ, and Charles Broome, appeal the district court's order dismissing them from the action. The issues in this appeal are:
 
 
 2
 Whether the district court correctly ruled that the 1986 and 1988 amendments do not apply retroactively to the plaintiffs' qui tam action; andWhether the district court correctly determined that the plaintiffs are not entitled to recover under the 1982 provisions of the Act.
 
 
 3
 In Case No. 91-3784, 947 F.2d 947, (Eagleye II ), plaintiff Eagleye appeals the district court's order dismissing the entire action, and the issue raised on appeal is:
 
 
 4
 Whether the district court properly dismissed Eagleye's second qui tam action.
 
 
 5
 Because we find that the district court committed no error, we shall affirm.
 
 I.
 A. Background
 
 6
 In November 1984, counsel for defendant TRW met with representatives of the federal government to inform them of an internal investigation into the accounting practices of TRW's Aircraft Components Group. On November 28, 1984, TRW provided the Department of Justice and the Department of Defense with a report that detailed the results of TRW's internal investigation. According to the report, TRW uncovered government subcontract pricing irregularities, which occurred between 1978 and 1984, by a division of its Aircraft Components Group. Under these noncompetitive subcontracts, the Components division had manufactured parts for military jet engines for several government prime contractors. On February 28, 1985, TRW provided the government with a supplemental report disclosing the results of an audit of the materials purchased by the Components division for its government contracts. The November and February reports revealed irregularities in the Components division's standard cost accounting system that resulted in overcharges to the government for labor and parts.
 
 
 7
 As a result of TRW's voluntary disclosures, the government opened a criminal investigation in December 1984. The criminal investigation was concluded in August 1988 when TRW and five former division employees, including two of the qui tam plaintiffs in the case, pled guilty to various criminal charges. On April 19, 1988, plaintiff Eagleye pled guilty to one count of conspiring to defraud the government, in violation of 18 U.S.C. Sec. 371; on August 25, 1988, TRW pled guilty to three counts of conspiring to defraud the government; and on August 31, 1988, plaintiff Broome pled guilty to one count of mail fraud, in violation of 18 U.S.C. Sec. 1341.
 
 B. The False Claims Act
 
 8
 Under the False Claims Act, a person who "knowingly presents ... a false or fraudulent claim for payment" to the government can be liable to the government for: 1) a penalty, between $5,000 and $10,000 under the present provisions, and $2,000 under the 1982 provisions; 2) three times the amount of damages sustained by the government, two times the amount under the 1982 version; and 3) costs of the civil action brought to recover the penalty or damages. 31 U.S.C. Sec. 3729(a). The Act contains qui tam provisions under which an individual may bring a civil action on his own behalf and on behalf of the government against anyone who violates the Act. 31 U.S.C. Sec. 3730(b)(1). Under the Act, if an individual files such a civil suit, the government may take over the action by entering an appearance within 60 days after being notified of the pendency of the lawsuit. 31 U.S.C. Sec. 3730(b)(2). Under the 1982 version of the Act, "[i]f the Government proceeds with the action, the action is conducted only by the Government," and "[t]he Government is not bound by an act of the person bringing the action." 31 U.S.C. Sec. 3730(b)(3). An individual who brings a qui tam action may receive a reasonable portion of the amount recovered even if the government takes over the action. 31 U.S.C. Secs. 3730(b)(1) and (c) (1982). The 1982 Act also includes a provision that prohibits the district court from exercising jurisdiction over suits brought under the Act in cases where the government decides not to participate in the action and the qui tam plaintiff's claims are based on information already in the possession of the government. 31 U.S.C. Sec. 3730(c)(1) (1982).
 
 
 9
 On October 27, 1986, Congress amended the Act. False Claims Amendment Act of 1986, Pub.L. 99-562, 100 Stat. 3153 (Oct. 27, 1986), now codified at 31 U.S.C. Secs. 3729-3733 (1988). The amendments expand the circumstances under which citizens may bring suit on behalf of the government, participate in the litigation, and recover a share of a judgment. The amendments change the Act's jurisdictional bar to provide that qui tam actions based on information that was publicly disclosed prior to initiation of the action will be barred unless the plaintiff who brings the action is an "original source" of the information underlying the complaint. 31 U.S.C. Sec. 3730(e)(4)(A). Congress further amended the Act in 1988 to provide for the dismissal of plaintiffs who are "convicted of criminal conduct arising from [their] role in the violation of [the Act]." Major Fraud Act of 1988, Sec. 9, Public L. 100-700, 102 Stat. 4638 (Nov. 19, 1988), now codified at 31 U.S.C. Sec. 3730(d)(3) (1988).
 
 II. Eagleye I
 A.
 
 10
 On April 4, 1986, before the 1986 amendments became effective, Eagleye, Russ, and Broome filed a qui tam action under the Act, 31 U.S.C. Secs. 3729 et seq., against defendants TRW, General Electric Company, United Technologies, and Iscar Blade Ltd., an Israeli defense contractor (Eagleye I ). The plaintiffs' complaint alleged that GE, as contractor, and TRW, as subcontractor, engaged in several conspiracies that resulted in the presentation of false claims for payment to the United States on military jet engine contracts from 1979 through 1984. Several of the allegations in the complaint were directed solely at TRW for that company's role as a military subcontractor for jet engine parts. The complaint also alleged that TRW, United Technologies, and Iscar Blades improperly shared price information and conspired to defraud the government on military contracts between 1979 and 1984.
 
 
 11
 After an investigation into the allegations, on June 3, 1986, the government entered its appearance and assumed control over the prosecution of the case, pursuant to 31 U.S.C. Sec. 3730(b)(2) (1982). On July 31, 1986, the government filed an amended complaint. The amended complaint contained only one claim against one defendant--TRW. The Department of Justice referred the other allegations against the other defendants, including those against GE and other allegations against TRW, to the Defense Department's Office of Inspector General for further investigation. On July 31, 1986, the district court entered a stipulation and order that provided, in part:
 
 
 12
 The original complaint shall not be the basis for any further proceedings by the [qui tam plaintiffs] in this action or for any separate action brought or pursued by the [qui tam plaintiffs].
 
 
 13
 On August 4, 1986, the district court issued an order regarding the status of the defendants named in the original complaint who were not named in the amended complaint. The order dismissed GE, United Technologies, and Iscar Blades without prejudice because of the United States' decision not to include them as named defendants in the amended complaint.
 
 
 14
 Congress amended the Act, as we have said, in October 1986. On March 23, 1987, the qui tam plaintiffs filed a motion to "Have Standing under the 1986 False Claims Act." In their motion, plaintiffs argued that the 1986 amendments should apply retroactively to the pending litigation. In 1988, Congress again amended the Act. On March 13, 1989, the government filed a motion to dismiss the plaintiffs from the case. In its motion to dismiss, the government argued that the jurisdictional bar of the 1982 Act, 31 U.S.C. Sec. 3730(b)(4) (1982), and the provision limiting the plaintiffs' recovery to what is reasonable, 31 U.S.C. Sec. 3730(c)(1) (1982), required dismissal of the plaintiffs because the information contained in the plaintiffs' initial complaint was based on information and evidence already in the possession of the government at the time the lawsuit was filed. In the alternative, the government argued that if the court finds that the 1986 amendments apply retroactively to this qui tam action, then 31 U.S.C. Sec. 3730(e)(4)(A) (1986) requires the dismissal of the plaintiffs because their action is based upon the public disclosure of allegations from the news media. Finally, the government argued that two of the three plaintiffs, Eagleye and Broome, should be dismissed under 31 U.S.C. Sec. 3730(d)(3) (1988) because the 1988 amendment requires dismissal of persons who were convicted of crimes in connection with the fraud alleged in a qui tam action.
 
 
 15
 On June 28, 1989, the district court rejected plaintiffs' argument that "standing" in the case should be determined under the 1986 amendments to the Act and ruled that the Act's 1982 provisions apply to this action. On November 30, 1990, the district court ruled on the government's motion to dismiss. The court concluded that the plaintiffs' claims were based on information that was in the government's possession when the plaintiffs filed their action. Applying the 1982 provisions, the district court ruled that, under 31 U.S.C. Secs. 3730(b)(4) and (c)(1), plaintiffs were not eligible for an informer's fee and, accordingly, granted the government's motion to dismiss.
 
 
 16
 On July 31, 1991, the district court denied the plaintiffs' motion for reconsideration or to alter and amend the judgment that had been entered. At the plaintiffs' request, the district court certified its judgment order to be a final judgment, pursuant to Fed.R.Civ.P. 54(b). Plaintiffs filed a timely notice of appeal.
 
 B.
 1. Retroactivity
 
 17
 The qui tam plaintiffs argue that the district court erred in ruling that the 1986 amendments were not retroactive. According to plaintiffs, because the 1986 amendments apply to this lawsuit, they should have been allowed to participate in the litigation and should not have been dismissed. Plaintiffs rely on Bradley v. Richmond School Board, 416 U.S. 696, 94 S.Ct. 2006, 40 L.Ed.2d 476 (1974), to support the argument that the law in effect at the time of the district court's decision governs unless there is some legislative history to the contrary. The government and TRW agree, although for different reasons, that the district court correctly determined that the 1982 qui tam provisions of the Act are controlling and that the 1986 amendments do not apply retroactively. They also agree that the district court properly dismissed the plaintiffs under the Act's 1982 qui tam provisions because the action was based on information already possessed by the government. We agree with the government and TRW that the Act's amendments do not apply retroactively.
 
 
 18
 Because the issue before us involves questions of statutory interpretation, our review is de novo. See United States v. Clay, 982 F.2d 959, 961 (6th Cir.1993).
 
 
 19
 The Supreme Court has held that, where congressional intent is clear as to the statute's retroactive or prospective application, that intent governs. Kaiser Aluminum & Chem. Corp. v. Bonjorno, 494 U.S. 827, 837, 110 S.Ct. 1570, 1576, 108 L.Ed.2d 842 (1990). In this instance, however, there is no clear language in the amendments to the False Claims Act indicating whether courts should apply the amendments retroactively. See United States v. Murphy, 937 F.2d 1032, 1037 (6th Cir.1991). Plaintiffs rely on Bradley, 416 U.S. at 715-17, 94 S.Ct. at 2018-19, for the principle that the court is to apply the law in effect at the time it renders its decision, unless doing so would result in a manifest injustice or there is statutory direction or legislative history to the contrary. Bradley, however, conflicts with the Supreme Court's more recent statements in Bowen v. Georgetown University Hospital, 488 U.S. 204, 208, 109 S.Ct. 468, 471, 102 L.Ed.2d 493 (1988), that "[r]etroactivity is not favored in the law" and "congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."
 
 
 20
 In Kaiser Aluminum, the Supreme Court chose not to resolve the conflict between Bradley and Bowen, and instead found that the particular statute at issue[2] clearly set forth Congress's intent that the statute is to be applied prospectively. Kaiser Aluminum, 494 U.S. at 837, 110 S.Ct. at 1576. Justice Scalia concurred in the result but wrote separately because he believed that the retroactivity rule of Bradley is a misstatement of clearly established law. Id. at 840-41, 110 S.Ct. at 1578-79 (Scalia, J., concurring). Thus, in Kaiser Aluminum, Justice Scalia would have taken the opportunity:to admit that the rule [the Court] expressed in ... Bradley was wrong, and to reaffirm the clear rule of construction that has been applied, except for these last two decades of confusion, since the beginning of the Republic and indeed since the early days of the common law: absent specific indication to the contrary, the operation of nonpenal legislation is prospective only.
 
 
 21
 Id. at 841, 110 S.Ct. at 1579 (Scalia, J., concurring).[3]
 
 
 22
 In an attempt to resolve the tension between Bradley and Bowen, this court, in Boddie v. American Broadcasting Cos., 881 F.2d 267 (6th Cir.1989), cert. denied, 493 U.S. 1028, 110 S.Ct. 737, 107 L.Ed.2d 755 (1990), ruled that "Bradley represents a relatively narrow exception to the general 'principle that statutes operate only prospectively,' a notion 'familiar to every law student.' " Id. at 269-70 (citation omitted). According to Boddie, where the statute does not clearly indicate that its provisions are retroactive, "post-Bradley cases have reaffirmed the 'venerable rule ... that statutes affecting substantive rights and liabilities are presumed to have only prospective effect.' " Id. at 270 (citations omitted).
 
 
 23
 In United States v. Murphy, 937 F.2d at 1037, this court ruled that while Boddie and recent Supreme Court cases require a narrow reading of Bradley, the phrase "substantive rights and liabilities" in Boddie should be construed broadly in the context of determining whether a statute is retroactive. Id. at 1038. In Murphy, this court examined the 1986 amendment to 31 U.S.C. Sec. 3729(a) and determined that the provision was not retroactive because it involved "substantive rights." Under section 3729(a):
 
 
 24
 Any person who ... knowingly presents ... to an officer or employee of the United States Government ... a false ... claim for payment ... is liable to the United States Government....
 
 
 25
 31 U.S.C. Sec. 3729(a) (1986). Prior to 1986, section 3729(a) subjected culpable defendants to double damages and a civil forfeiture of $2,000. The 1986 amendment allowed treble damages and an increased forfeiture. The 1986 amendment also defined "knowingly" for purposes of the statute to include "deliberate ignorance of the truth," 31 U.S.C. Sec. 3729(b)(2) (1986), while, prior to 1986, this circuit required plaintiffs to show, by clear, unequivocal evidence, that defendant actually knew of the claim's falsity. Murphy, 937 F.2d at 1038 (citing United States v. Ekelman & Assoc., Inc., 532 F.2d 545, 548 (6th Cir.1976)). In Murphy, the government contended that the 1986 amendments should apply retroactively because they are merely remedial and do not affect substantive rights and liabilities.[4] This court, however, determined that 31 U.S.C. Sec. 3729(a) involves substantive rights because, prior to the amendment, the defendant could be held liable only upon a clear showing of actual knowledge of the falsity of the claims. After the amendment, however, a defendant could be held liable even if he had only "constructive knowledge" of the claim's falsity. Because the 1986 amendment affected the substantive rights of the defendant, this court ruled that the 1986 amendment to section 3729(a) was not retroactive.
 
 
 26
 Similarly, we believe that the amendments to section 3730 affect the substantive rights of both the qui tam and the government plaintiffs. Under the 1986 amendments to section 3730, qui tam plaintiffs enjoy greater rights under the Act. The amendments expand the circumstances under which citizens may bring false claims suits, and give qui tam plaintiffs more rights to participate in the litigation and a greater share in the recovery.[5] The amendments do not fall under Bradley's narrow exception of retroactivity. Because the amendments are not retroactive, the provisions that govern are those that were in effect at the time the conduct that is the subject of this litigation occurred.[6] Thus, the 1982 provisions of the Act apply to this lawsuit because the conduct that gave rise to this suit, that is, TRW's overcharges, occurred prior to the 1986 amendments. The district court correctly applied the 1982 version of the Act.[7]
 
 2. Dismissal of Eagleye I
 
 27
 Applying the 1982 provisions to Eagleye I, we now determine whether the district court erred when it dismissed the qui tam plaintiffs' claims for the reason that their claims were based on information already in the government's possession at the time the qui tam action was initiated. The court disposed of plaintiffs' claims against TRW in an order granting the government's "motion to dismiss." Nevertheless, we are satisfied that the court actually entered an order of summary judgment against the plaintiffs' claims because the court based its ruling on the uncontroverted evidence that, at the time plaintiffs filed their qui tam action, the government possessed information sufficient to enable it to investigate TRW's false claims. Thus, the district court concluded that, as a matter of law, plaintiffs were not entitled to recover under section 3730(c)(1) of the Act.
 
 
 28
 This court reviews the district court's grant of summary judgment de novo. Brooks v. American Broadcasting Cos., 932 F.2d 495, 500 (6th Cir.1991). Summary judgment is proper "if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " Canderm Pharmacal, Ltd. v. Elder Pharmaceuticals, Inc., 862 F.2d 597, 601 (6th Cir.1988) (quoting Fed.R.Civ.P. 56(c)). "Material" facts are those that might affect the outcome of the suit under the governing law and do not include factual disputes that are irrelevant or unnecessary. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The dispute must also be "genuine"; that is, it must concern evidence upon which the jury could return a verdict for the nonmoving party. Id.
 
 
 29
 Upon review of all the papers pertinent to the motion for summary judgment, and viewing the evidence in a light most favorable to the nonmoving party, id. at 255, 106 S.Ct. at 2513, we must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52, 106 S.Ct. at 2512. Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250, 106 S.Ct. at 2511.
 
 
 30
 As an initial matter, we note that the government is incorrect when it argues that sections 3730(b)(4) and (c)(1) require dismissal of the plaintiffs as parties to the action. The 1982 version of these provisions reads as follows:
 
 
 31
 [ (b) ](4) Unless the Government proceeds with the action, the court shall dismiss an action brought by the person on discovering the action is based on evidence or information the Government had when the action was brought.
 
 
 32
 (c)(1) If the Government proceeds with the action, the person bringing the action may receive an amount the court decides is reasonable for disclosing evidence or information the Government did not have when the action was brought. The amount may not be more than 10 percent of the proceeds of the action or settlement of a claim and shall be paid out of those proceeds.
 
 
 33
 31 U.S.C. Secs. 3730(b)(4) and (c)(1) (1982). The government argues that because plaintiffs' claims were based on information already in the possession of the government at the time the action was brought, sections 3730(b)(4) and (c)(1) (1982) require dismissal of the plaintiffs from this action. The plain language of the provisions, however, does not support this conclusion, for neither provision refers to the dismissal of parties. Section 3730(b)(4) (1982) bars a district court from exercising jurisdiction over an action brought by an individual if: 1) the government decides not to proceed with an action; and 2) the action is based on information already in the government's possession at the time suit was filed. The provision says nothing about dismissing parties. Similarly, section 3730(c)(1) (1982) does not give the district court authority to dismiss a party. It refers to the amount a plaintiff may recover depending on what the court decides is reasonable. Thus, these sections do not provide a basis for dismissing the plaintiffs from the lawsuit.[8]
 
 
 34
 After carefully reviewing the district court's order, we are satisfied that the district court did not dismiss the plaintiffs on the basis of the jurisdictional bar of section 3730(b)(4) (1982). Rather, the court reviewed the evidence, determined that material facts were not in dispute, and concluded that, as a matter of law, under section 3730(c)(1) (1982) plaintiffs were not entitled to a reasonable informer's fee. We believe that the district court acted appropriately when it entered judgment against the qui tam plaintiffs on this basis.
 
 
 35
 The government bears the burden of establishing that plaintiffs' lawsuit was based on information and evidence in possession of the government at the time the action was filed. As the district court found, the government submitted to the court two reports that had been authored by TRW officials and addressed to the Department of Defense in November 1984 and February 1985. The reports detailed the "padding" and other pricing irregularities committed by TRW that resulted in overcharges to the government. These two reports provide evidence that the government was aware of TRW's illegal conduct by November 1984. The qui tam plaintiffs did not file this false claims suit until April 1986. Evidence shows that subsequent to TRW's report to the Justice Department but prior to filing the qui tam suit, plaintiffs provided the government with more detailed information about TRW's misconduct. This, however, does not controvert the evidence showing that the government was aware of TRW's actions prior to the initiation of the qui tam plaintiffs' false claims suit.
 
 
 36
 The evidence possessed by the government need not be a " 'mirror image of that in the hands of the qui tam plaintiff.' " United States ex rel. State of Wisconsin v. Dean, 729 F.2d 1100, 1103 (7th Cir.1984) (citation omitted). Rather, the evidence need only be " 'sufficient to enable [the government] adequately to investigate the case and to make a decision whether to prosecute.' " Id. (bracketed material in original) (citation omitted). The qui tam plaintiffs fail to present any evidence to contradict the government's evidence, which established that it was aware of TRW's conduct. Consequently, the qui tam plaintiffs raise no genuine issue of material fact requiring resolution by the trier of fact.
 
 
 37
 We believe that the district court correctly concluded, as a matter of law, that plaintiffs are not eligible to collect an informer's fee. We therefore affirm the district court's judgment order.
 
 III. Eagleye II
 A.
 
 38
 We now turn to Eagleye's appeal in Eagleye II. On August 12, 1987, Eagleye filed a second False Claims Act suit (Eagleye II ). This time, the plaintiff named TRW and GE as defendants. The complaint, like the complaint in Eagleye I, alleged that TRW and GE conspired to defraud the government on a number of Defense Department contracts between 1979 and 1984. The complaint further alleged that TRW engaged in other fraudulent acts alone and with GE that resulted in the presentation of false claims to the government.
 
 
 39
 On January 11, 1988, the government exercised its option under section 3730(b)(2) to intervene as plaintiffs. The government also moved to dismiss the qui tam plaintiffs from the Eagleye II action arguing that: 1) the complaint was based on allegations or transactions that were already the subject of Eagleye I, in violation of 31 U.S.C. Sec. 3730(e)(3) (1988), which prohibits a person from bringing an action based on allegations that are the subject of a civil suit in which the government is already a party; and 2) the filing of the complaint was in direct violation of the July 31, 1986 stipulation and order entered in Eagleye I. The government also moved for voluntary dismissal under Fed.R.Civ.P. 41(a).[9]
 
 
 40
 On November 30, 1990, the district court granted the government's motion to dismiss. The district court ruled, however, that the 1986 and 1988 amendments to the Act do not apply to this action because the action involves conduct that occurred before the amendments were enacted. Instead, the court considered the government's motion under the 1982 Act provisions and found dismissal proper under sections 3730(b)(1) and (3) (1982) because the government and the court consented to dismissal.[10] Eagleye filed a timely motion to alter or amend the district court's judgment pursuant to Fed.R.Civ.P. 59(e). The court denied the motion to alter or amend, and Eagleye filed a timely appeal.
 
 B.
 
 41
 Eagleye argues that Eagleye II was filed in 1987 and that the 1986 amendments, which were in effect at the time the lawsuit was filed, apply to his cause of action. According to Eagleye, the 1986 provisions[11] entitle him to a hearing on the government's motion to dismiss.
 
 
 42
 The district court correctly determined, however, that the 1982 provisions apply because Eagleye II, although filed in 1987, was based on TRW's conduct, which occurred prior to the enactment of the 1986 amendments. As it did in Eagleye I, the government decided to proceed with Eagleye's false claim action. According to the 1982 provisions, the government assumed full control over the litigation and could dismiss the action as long as the court and the Attorney General provided written consent to the dismissal. See 31 U.S.C. Sec. 3730(b)(1) (1982). A hearing was not required under the 1982 provisions, and both the government and the district court consented to dismissal. Consequently, we conclude that the district court did not err when it granted the government's motion to dismiss Eagleye II.
 
 IV.
 
 43
 For these reasons, we AFFIRM the decisions of the district court.
 
 ORDER
 
 44
 Oct. 14, 1993.
 
 
 45
 Upon consideration of appellant Eagleye's motions to file petition for rehearing en banc out of time and to exceed the page limit; motion to recall the mandate, and; motion to vacate this court's order of September 21, 1993,
 
 
 46
 And upon further consideration of the appellee USA's response in opposition to the motions to vacate and recall the mandate,
 
 
 47
 It is ORDERED that the motions be and hereby are denied.
 
 
 
 *
 The Honorable John W. Peck did not participate in this decision due to his untimely death on Sept. 7, 1993
 
 
 [1]
 A qui tam action is "an action brought by an informer, under a statute which establishes a penalty for the commission ... of a certain act, and provides that the same shall be recoverable in a civil action, part of the penalty to go to any person who will bring such action and the remainder to the state or some other institution." Black's Law Dictionary 1251 (6th ed. 1990)
 
 
 [2]
 The federal postjudgment interest statute, 28 U.S.C. Sec. 1961
 
 
 [3]
 Justice Scalia "limit[ed] the expression of the rule to nonpenal legislation because a contrary presumption (i.e., a presumption of retroactivity) is applied to the repeal of punishments." Kaiser Aluminum, 494 U.S. at 841 n. 1, 110 S.Ct. at 1579 n. 1 (Scalia, J., concurring)
 
 
 [4]
 In this case, the government argues that section 3730 involves substantive rights and that the section's 1986 amendments are, therefore, not retroactive
 
 
 [5]
 For example, compare 31 U.S.C. Sec. 3730(b)(3) (1982), which states, "If the Government proceeds with the action, the action is conducted only by the Government," with 31 U.S.C. Sec. 3730(c) (1986), "If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2)." Furthermore, under the 1986 amendments, if the government wishes to dismiss the action, the government must give the qui tam plaintiff notice and the court must provide that plaintiff a hearing on the motion to dismiss. 31 U.S.C. Sec. 3730(c)(2)(A) (1986). And qui tam plaintiffs now have limited rights to participate in discovery and at trial, and they can take a greater share in the recovery. Compare 31 U.S.C. Secs. 3730(c)(1) and (2) (1982) with 31 U.S.C. Secs. 3730(d)(1) and (2) (1986). Finally, the 1988 provisions now provide that "[i]f the person bringing the action is convicted of criminal conduct arising from his ... role in the violation of [the Act], that person shall be dismissed from the civil action and shall not receive any share of the proceeds of the action." 31 U.S.C. Sec. 3730(d)(3) (1988)
 
 
 [6]
 See Kaiser Aluminum, 494 U.S. at 855, 110 S.Ct. at 1586 (Scalia, J., concurring) ("the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place....")
 
 
 [7]
 The district court issued its ruling that the 1982 provisions apply in its June 28, 1989 marginal order. The court, however, did not provide any analysis supporting its ruling. In a later order, it stated its reasoning for the June 28 marginal order:
 [T]he qui tam provisions in effect at the time this action was initiated shall be the applicable law, and the 1986 amendments ... shall have no retroactive application....
 (Emphasis added.) But in Eagleye II, the court contradicted itself when it stated that it had already determined in Eagleye I that "the 1986 amendments do not apply to pre-1986 conduct. "
 We believe that the district court simply misstated its rationale in Eagleye I. We conclude that the district court set forth the correct rationale for applying the 1982 provisions to both actions in Eagleye II.
 
 
 [8]
 Although the more recent amendments do not apply to Eagleye I, we note that the relevant 1986 amendments also do not authorize the dismissal of any party. See 31 U.S.C. Secs. 3730(d)(1) and (e)(4)(A) (1986). The only provision of the Act that addresses the dismissal of parties is a 1988 amendment that provides, in part:
 If the person bringing the action is convicted of criminal conduct arising from his or her role in the violation of [the Act], that person shall be dismissed from the civil action and shall not receive any share of the proceeds of the action.
 31 U.S.C. Sec. 3730(d)(3) (1988) (emphasis added). This provision does not govern the dispute before us.
 
 
 [9]
 Rule 41 governs voluntary dismissal and provides, in part:
 [A]n action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.
 Fed.R.Civ.P. 41(a)(2).
 
 
 [10]
 Section 3730(b)(1) provides, in part:
 An action may be dismissed only if the court and the Attorney General give written consent and their reasons for consenting.
 31 U.S.C. Sec. 3730(b)(1) (1982). And section 3730(b)(3) provides:
 If the Government proceeds with the action, the action is conducted only by the Government. The Government is not bound by an act of the person bringing the action.
 31 U.S.C. Sec. 3730(b)(3) (1982).
 
 
 [11]
 Specifically, section 3730(c)(2)(A), which provides:
 The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.
 31 U.S.C. Sec. 3730(c)(2)(A) (1986).