12 F.3d 212
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Ernest JACKSON, Sr., Plaintiff-Appellant, Cross-Appellee,
v.
Raymond HOYLMAN, Deputy U.S. Marshal; Robert Bidwell,
Deputy U.S. Marshal, Defendants-Appellees, Cross-Appellants.
 Nos. 92-3554, 92-3607.
 United States Court of Appeals, Sixth Circuit.
 Dec. 3, 1993.
 
 On appeal from the United States District Court for the Northern District of Ohio, Western Division, No. 89-07208; John W. Potter, J.
 N.D.Ohio.
 AFFIRMED.
 Before: BOGGS and SUHRHEINRICH, Circuit Judges; and BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff Ernest Jackson, Sr. ("Jackson") appeals final judgment for defendants Raymond Hoylman ("Hoylman") and Robert Bidwell ("Bidwell"), federal deputy marshals, in a Bivens action challenging Jackson's arrest by the defendants. Jackson alleged several theories of liability.
 
 
 2
 * Initially, the district court denied, in part, the defendants' summary judgment motion in which they asserted defenses and relied on qualified immunity. The defendants then appealed this denial and this court affirmed. Jackson v. Hoylman, 933 F.2d 401 (6th Cir.1991). On remand, at the trial, the jury rendered a verdict for the defendants. On this second appeal, Jackson contends that the district court erred in granting, prior to the trial, summary judgment to defendants with respect to other theories of liability upon which the defendants relied, and erred at the trial in other respects. The defendants cross-appeal, but we need not, in view of our disposition of the issues, resolve the cross-appeal.
 
 
 3
 Upon the prior appeal, in addressing the question whether the district court erred in denying in part the defendants' summary judgment motion, this court outlined the facts as follows:
 
 
 4
 This case arises from the attempt by Deputy United States Marshals Hoylman and Bidwell to arrest Ernest Jackson, Jr. [defendant's son] for failure to appear in response to a summons for service as a grand juror. After receiving a warrant for Jackson's arrest, the marshals telephoned the number listed on the warrant and spoke to a man who identified himself as Ernest Jackson. Jackson refused to go to the courthouse for jury duty and told the marshals that they would have to come get him. Approximately fifteen minutes later, Hoylman and Bidwell arrived at Jackson's home. They knocked at both the front and back doors, loudly announced themselves as deputy marshals with a warrant for Jackson's arrest, and asked that he come forward. There was no response. Seeing a light on in the back of the house, the marshals entered and again shouted their identities and ordered Jackson to come forward. Still, there was no response. When they found no one downstairs, they proceeded upstairs.
 
 
 5
 The marshals found Jackson [Sr.] in his bedroom talking on the telephone. It is impossible for us ... to determine what happened next. Plaintiff and defendants offer radically different versions of what occurred....
 
 
 6
 * * *
 
 
 7
 * * *
 
 
 8
 Jackson [Sr.], a black man, alleged that he was talking on the telephone in his bedroom when two white strangers, dressed in plainclothes, appeared unannounced in the doorway. The room was dark and Jackson did not see them show any identification. He became frightened at their presence and asked them to leave. He asked the person to whom he was speaking on the telephone to call the police. He contends that his hands were in plain view and that there was nowhere that he could have hidden a gun. Hoylman immediately grabbed the telephone out of Jackson's hand, climbed onto the bed and told him to relax. Hoylman then pushed Jackson back on the bed with his arm under Jackson's neck. Bidwell, as ordered, handcuffed Jackson who, because of previous back surgery, was unable to resist in any way. Jackson claims that prior to handcuffing him, the marshals made no effort to verify that Jackson was the person named in the warrant.
 
 
 9
 Hoylman testified that he and his partner announced themselves "twenty times in that house, loudly" but received no response. When they finally found Jackson in the upstairs bedroom, they identified themselves as marshals and repeatedly asked whether he was Ernest Jackson. Jackson responded only by swearing and shouting that they should get out of his house and that they had no rights there. Hoylman approached the bed with the warrant in his hand and tried once again to identify himself and explain their purpose in being there. Jackson swung at him and they "struggled for, seemed like a long time, maybe a minute or two. Mr. Jackson was kicking and swinging and fighting hard." Hoylman testified that he only asked Bidwell to handcuff Jackson when Jackson, after being held down on the bed by Hoylman, continued to swing and kick at the marshals.
 
 
 10
 Id. at 401-403.
 
 
 11
 A criminal complaint was filed against Jackson for forcibly assaulting, resisting, opposing, impeding, and interfering with the marshals, but the grand jury did not indict him. Jackson then filed a Bivens action[1] against the marshals in an Ohio state court, but the case was removed to federal district court. The district court dismissed, on summary judgment, the Fourth Amendment claims for an unlawful search of Jackson's home and for arrest of Jackson on a warrant that was actually issued for his son if he was arrested under the warrant and not for resisting arrest, and held that Jackson presented constitutional claims of unlawful arrest and excessive force. After this court, as stated, affirmed such denial of summary judgment for the marshals, Jackson, 933 F.2d at 402-403, upon remand and trial, the jury rendered a verdict for the marshals on all issues presented to it.
 
 
 12
 On appeal, Jackson presents five issues: (1) whether the trial court erred in granting summary judgment on his claim that his Fourth Amendment rights were violated by his arrest on a warrant actually issued for his son; (2) whether the trial court erred in granting summary judgment on his claim that an illegal search of his home violated his Fourth Amendment rights; (3) whether the trial court abused its discretion in denying his motion for default judgment and permitting the defendants to file an answer instanter;[2] (4) whether the trial court erred in admitting evidence of Jackson's prior medical history and past encounters with law enforcement officers as being relevant to his claims of physical and emotional damages following his arrest; and (5) whether the jury instructions were proper.
 
 II
 
 13
 Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. This court reviews the district court's grant of summary judgment de novo. United States v. TRW, Inc., 4 F.3d 417, 423 (6th Cir.1993).
 
 III
 
 14
 We first address the question whether the trial court erred in granting summary judgment on Jackson's claim that his Fourth Amendment rights were violated by arresting him on a warrant issued for his son. On November 22, 1988, Magistrate James G. Carr signed a "Show Cause Order Under 28 U.S.C. 1866(g)" ordering "Ernest Jackson" to appear on November 29 to show cause why he failed to comply with a grand jury summons. It is undisputed that the member of the grand jury was Jackson's son, Ernest Jackson, Jr. When Jackson, Jr. did not appear on November 29, the magistrate issued a "Warrant for Arrest" of "Ernest Jackson." On the back of the warrant was inscribed a name (Ernest J. Jackson); last known residence (1459 Palmetto, Toledo, OH 43606 Phone: [ ]; last known employment (Minister); date of birth (Age 23 as of January 1988); social security number (XXX-XX-XXXX); sex (Male); and race (Black).
 
 
 15
 In arguing that the district court erred in granting summary judgment to the marshals on his claim that his arrest on a warrant issued for his son violated his Fourth Amendment rights, Jackson asserts that prior to making an arrest, officers must have probable cause that the person they are arresting is the person named in the warrant.
 
 
 16
 However, "the Constitution does not guarantee that only the guilty will be arrested; police ... may rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistaken identity or otherwise." Masters, 872 F.2d at 1253 (citing Baker v. McCollan, 443 U.S. 137, 145 (1979)). In Baker, one McCollan was arrested and detained for three days under a warrant for his brother. Similarly, in this case, Jackson was arrested under a warrant for his son. Since the arrest warrant in Baker conformed to Fourth Amendment requirements, the Supreme Court held McCollan did not state a federal constitutional claim. 443 U.S. at 144. Addressing the Fourteenth Amendment due process claim, the Court noted:
 
 
 17
 Respondent's innocence of the charge contained in the warrant ... is largely irrelevant to his claim of deprivation of liberty without due process of law....
 
 
 18
 [W]e do not think a sheriff executing an arrest warrant is required by the Constitution to investigate independently every claim of innocence, whether the claim is based on mistaken identity or a defense such as lack of requisite intent.
 
 
 19
 Id. at 145-146 (footnote omitted).
 
 
 20
 Since the arrest was based on the warrant, the marshals relied on a facially valid arrest warrant issued by Magistrate Carr. Therefore, under Masters, Baker, and the specific facts of this case, the marshals could arrest Jackson, Sr., even if he claimed he was not the person named in the warrant, without incurring liability. The trial court's grant of summary judgment on this issue was proper.[3]
 
 IV
 
 21
 We next appraise whether the trial court erred in granting summary judgment on Jackson's claim that an illegal search violated his Fourth Amendment rights. Jackson asserts that the arrest warrant for his son was not an effective substitute for a search warrant for his home since he had a Fourth Amendment privacy interest as a "third party" not named in the arrest warrant. The marshals rely, as did the district court, on Payton v. New York, 445 U.S. 573 (1980), in asserting a search warrant was unnecessary. Under Payton, "for Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." 445 U.S. at 603. The district court determined the marshals had probable cause to believe that the Ernest Jackson named on the warrant lived at 1459 Palmetto, the address on the warrant, because it was without dispute that Hoylman telephoned an "Ernest Jackson" at the telephone number listed on the warrant, that an Ernest Jackson identified himself as the juror who refused to appear for jury duty, and that the marshals then proceeded forthwith to the home. While Jackson, Sr., denied that he had such a telephone conversation with the marshals, he did not contend that the marshals did not talk to his son.
 
 
 22
 Since the marshals had probable cause to believe that Ernest Jackson, who was the subject of the arrest warrant, lived at 1459 Palmetto, and believed he was probably there at the time of their search, the grant of summary judgment for the marshals was proper under Payton.[4]
 
 V
 
 23
 Jackson next claims the trial court abused its discretion in denying his motion for default judgment and permitting the defendants to file an answer instanter. We review the action of the trial court allowing the marshals to file a late answer under the abuse of discretion standard. See Hill v. Marshall, 861 F.2d 720, 1988 WL 117163 at * 2 (6th Cir.1988) (unpublished) (holding where plaintiff did not assert his case had been prejudiced by defendant's delay in filing the answer, and plaintiff did not give notice to anyone that an answer had not been filed, and defendant explained why he did not file a timely answer, the trial court did not abuse its discretion in allowing an answer to be filed).
 
 
 24
 After Jackson initially filed this case in an Ohio court on March 2, 1989, the case was removed to federal district court. The court granted the marshals an extension of time to file an answer until June 14, 1989. On June 9, the marshals moved to dismiss the case or in the alternative for summary judgment. On December 18, 1989, the district court granted in part and denied in part the marshals' motion to dismiss. After the marshals filed for interlocutory appeal, we affirmed the decision of the trial court on May 22, 1991. Jackson v. Hoylman, 933 F.2d 401 (6th Cir.1991).
 
 
 25
 The marshals moved for substitution of party defendants on October 11, 1991 and moved to dismiss on October 15, 1991; the district court denied these motions on January 30, 1992. The marshals filed deposition notices in February 1992.
 
 
 26
 On February 21, 1992, the marshals filed a Motion to Answer Instanter;[5] Jackson filed a motion for default judgment on February 27, which was denied on March 3. The court granted the marshals leave to file the answer on March 9, 1992. Thus, no answer was filed in the action which started March 7, 1989, until March 9, 1992.
 
 
 27
 Citing the language of Rule 6(b), Jackson contends the district court had no discretion to allow filing of the marshals' late answer "when there was no cause shown and no excusable neglect asserted in the request." Thus, Jackson asserts, the court's denial of his motion for default judgment was clearly erroneous. Under Fed.R.Civ.P. 6(b),
 
 
 28
 When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect....
 
 
 29
 In addition, Jackson contends the late answer prejudiced his case since defendants were allowed to raise affirmative defenses in their answer less than sixty days before trial. The marshals, however, allege Jackson had notice of their defenses through their motion to dismiss and the subsequent appeal.
 
 
 30
 Under the particular circumstances of this case, we cannot conclude that the district court abused its discretion by allowing the defendant to file the late answer. Cf. Pioneer Investment Services Co. v. Brunswick Assoc. Ltd. Partnership, 113 S.Ct. 1489 (1993) (discussing bankruptcy rule patterned after Fed.R.Civ.P. 6(b)).
 
 VI
 
 31
 We also consider whether the trial court erred in admitting evidence of Jackson's prior medical history and past encounters with law enforcement officers as being relevant to Jackson's claims of physical and emotional damages following his arrest. Jackson first claims evidence of misdemeanor assault convictions was inadmissible for the purpose of attacking his credibility under Fed.R.Evid. 609(a) or to prove his character under Rule 404(b). He also claims it was not relevant under Rule 402, and that any relevance was outweighed by its prejudicial effect under Rule 403. The defense elicited from Jackson that he served sixty days for assault and battery in 1970 and ten days for assault and battery in 1973, and that he was charged with aggravated menacing in 1974 and 1975. Jackson asserts this damaged his credibility in the eyes of the jury.
 
 
 32
 Jackson next avers that the court erred by admitting evidence of a thirty-year-old gunshot wound which was allegedly not relevant to his injuries at issue in this case. Finally, he objects to the reference to his gonorrhea.
 
 
 33
 In his complaint, Jackson alleges that "as a result of defendants' conduct, plaintiff suffered injury to his throat, shoulders and severe aggrivation (sic) of previously existing back injury, as well as fear and mental anguish during such altercation," and that he "suffered humiliation, anger, mental anguish, and despair upon being arrested and held on charges which were without foundation." Jackson testified about physical injuries he sustained at the time of his arrest and also emotional injuries including nightmares, trembling, compulsively checking the lock on his door, and being unable to watch certain things on television.
 
 
 34
 The marshals assert that since Jackson placed his physical and emotional condition in issue, his prior medical history is clearly relevant. For example, Jackson had been shot in the knee as a young man, and he was declared completely disabled due to back injuries after an industrial accident. These events, according to the marshals, could have affected his physical and emotional condition even after the 1988 arrest. Regarding the misdemeanor convictions, the marshals assert they were properly elicited to impeach appellant by contradiction under Fed.R.Evid. 404(b). Jackson testified he was embarrassed that his neighbor saw him arrested by the marshals; the marshals assert this led the jury to believe this confrontation with law enforcement officers was unusual for him.
 
 
 35
 This court has stated that under Rule 403,
 
 
 36
 the admission of relevant, potentially prejudicial evidence is placed within the sound discretion of the trial court.... In reviewing a decision of a trial court on this issue we must look at the evidence in a light most favorable to its proponent, maximizing its probative value and minimizing its prejudicial effect.
 
 
 37
 United States v. Brady, 595 F.2d 359, 361 (6th Cir.), cert. denied, 444 U.S. 862 (1979). Since Jackson's physical and emotional condition was highly relevant to the issue of damages in this case, we cannot conclude that the trial court abused its discretion by admitting the evidence at issue.
 
 VII
 
 38
 Finally, we appraise whether the jury instructions were proper. Jackson objects to the following jury instructions:
 
 
 39
 If you find that the plaintiff was under arrest on the warrant, then you must find for the Defendant Deputy U.S. Marshals on the count charging unlawful arrest.
 
 
 40
 Deputy U.S. Marshals may rely on facially valid arrest warrants even in the face of vehement claims of innocence by reason of mistaken identity or otherwise.
 
 
 41
 The law recognizes that it is inevitable that Deputy U.S. Marshals will, in some cases, reasonably but mistakenly arrest the wrong person and for this they are not to be held liable.
 
 
 42
 Plaintiff has no right to resist an arrest, even if the arrest is unlawful.
 
 
 43
 Jackson asserts the issues at trial were whether the marshals used excessive force during the arrest and whether, assuming they did not arrest him pursuant to the warrant, they had probable cause to arrest him for resisting arrest. Jackson claims that where an arrest is unlawful due to use of excessive force, the person arrested is entitled to resist such force in self defense. He essentially asserts that the arrest on the warrant in this case was separate from the arrest for assault and resisting arrest, and that only the latter was at issue at the trial since summary judgment had disposed of the arrest on the warrant issue.
 
 
 44
 While the jury was instructed to find for the marshals if the arrest was on the warrant,[6] the jury was also instructed that it could find for Jackson if it found that the arrest was for resisting the marshals and that the marshals had no probable cause for the arrest for resisting arrest.[7] Regarding the excessive force claim, the judge charged that "[a]s a matter of law, every person has the right not to be subjected to excessive force while being arrested." The judge also instructed the jury on punitive damages. Assessing the jury instructions on the whole, we cannot say that they were "confusing, misleading, or prejudicial."
 
 VIII
 
 45
 For the reasons mentioned, we AFFIRM the verdict of the jury for defendants Hoylman and Bidwell.
 
 
 
 [1]
 See Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971) (holding complaint asserting that narcotics agents entered petitioner's apartment without a warrant, searched the apartment, and arrested him, all without probable cause, stated federal claim for damages under Fourth Amendment)
 
 
 [2]
 "Instanter" means "immediately; instantly; forthwith; without delay." Black's Law Dictionary 799 (6th ed. 1990)
 
 
 [3]
 See also Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir.1988) (holding policeman under no obligation to give any credence to suspect's explanation of innocence); White v. City of Muskegon, 749 F.Supp. 829, 831 (W.D.Mich.1990) (holding man mistakenly arrested after traffic violation under outstanding felony arrest warrant for individual with same name failed to state actionable constitutional claim based on his detention, citing Baker and Masters )
 
 
 [4]
 Jackson argues on appeal that this search was illegal because the magistrate had no authority to issue the arrest warrant. It does not appear that Jackson made this contention below. In any case, it is clear that the magistrate did have such authority. See Fed.R.Crim.P. 4; 28 U.S.C. Sec. 1866(g); and district court local order of October 4, 1979, assigning grand jury duties to Magistrate Carr (Brief of Defendants-Appellees at 36). In any event, the marshals could properly rely on a facially valid arrest warrant. Baker v. McCollan, 443 U.S. 137, 145-46 (1979)
 
 
 [5]
 The marshals' motion stated:
 The motions to dismiss and summary judgment filed on behalf of defendants having been denied, in the interest of justice and in order to resolve the case on the merits, leave is now requested to answer the complaint.
 
 
 [6]
 Actually, the court had previously granted summary judgment to the marshals on this legal issue
 
 
 [7]
 The judge instructed the jury:
 On the other hand, if you find that the arrest was only for assaulting or resisting, then you must find whether or not the Plaintiff was deprived [of] liberty "without due process of law." In other words did the Defendants have probable cause to arrest the Plaintiff.
 Probable cause exists if the facts and circumstances known to the Deputy U.S. Marshals are sufficient to warrant a reasonable law enforcement officer to believe that a crime was committed.
 You are instructed as a matter of law that, a Deputy U.S. Marshal has the right to arrest a person without a warrant whenever the officer reasonably believes that such a person has forcibly assaulted, resisted, opposed, impeded, or interfered with U.S. Deputy Marshal while performing official duties.
 ... the actions of the officer in making an arrest are to be measured by the test of what a reasonable person would have believed under the same circumstances.